By the Court,
Nelson, J.
The limitation' to Herman Livingston, of that portion of' lot No. 4, conditionally devised to his brother Henry, is valid and effectual as an executory devise, and the only material and difficult question in the‘case is, whether the contingency has happened ; or, in other words, whether the condition has been performed by Henry, the uncle, upon which the estate was ]¡p go over. The intent of the testator, John,-the fathert who ' prescribed the condition, is to govern in construing it according to the universal rule applicable to the interpretation of wills. It is said in the books, that conditions, the performance of. which are to create an estate, should receive a liberal construction, and if performed as near to the intent as possible, it will be sufficient ; and that those which defeat an estate are to be construed strictly. 2 Co. Litt. 1 u. 2 Cruise, tit. Cond. ch. 2, § 1, p. 34. 5 Viner, tit. Condition, Q. a. pi. 25.' These rules, however, so far as they may be supposed to influence the mind in. endeavoring to arrive at the true intent of the condition, and in pronouncing upon the rights of the respective parties, may be said to neutralize the force of each other, because the performance of the condition comes within both; it *172 defeats and creates an estate at the,-same instant. It may,-.however, be safely-assumed that .if the performance .is according to the substance and effect of- the condition required by the testator, it. is sufficient. 5 Vin. tit, Cond. let. Q. a. Many examples are given, in illustration of the position.’ One is ás follows :■ if the condition be to make a feoffment, a conveyance by lease and- release is good, 6 T. R. 722.
Upon looking into the will, of the .testator, John, it will-be seen, that he antiei-. pated the difficulty that has actually occurred in the ease, and- guarded against it, so far as it was under his control. . If he-has not been entirely successful, he-has. at least, :I think,, made manfest his own meaning and wishes, and- thus-. far cleared the-point of embarrassment., The,-condition ..prescribed:.to the devise of:part of lot Ño. 4,-to Henry, is clearly and specifically stated. If,” he says, “my said1 brother shall, in-conformity to his said declared intention, give .and-devise,-or' otherwise assure to my said son Henry, .in fee. simple, the one .equal moiety of the said great lot No. 8, that from and immediately after my said son Henry shall come into the seisin and possession of-the-same,-then the devise of .that part of the said great lot No. 4, herein-before given, and made to my son- Henry, shall-be null and void, &e.;. and from and immediately ■ thereafter, -1 do give.-and ■ devise that-part of. the said, great lot Nq.-4, herein before given, to. my said son • Henry, unto my said son Herman,” &c. Again: after reciting that.a'difficulty might arise in determining .what should be considered as a moiety ■ of the said great lot No. 3, upon which the estate 'of Henry was to cease, he-“directs,” for the purpose of obviating all disputes in the matter, “that the will pleasure and declaration of my said brother. Henry, to be contained in his last* will and testament,. .or any other writing to be' by him. executed,. shall be conclusive upon this question ;■ that.is to say; if my said- brother H. shall declare in manner aforesaid, that- such part of the said great .lot No. 3 as he-shall or may devise, or otherwise give to my said son H., in fee- simple, shall be deemed or called by him to .be the.-equal .moiety of the said great lot No. 3 ; or if- ,he shall, by deed, will or otherwise actually give to my said son H.-, in fee simple; the moiety, in value of the said great lot No. 3, or a greater proportion thereof, then the said devise over to my said son Herman shall take effect,” &c. -A proviso is then added, that Henry shall-not be divested of his estate in great lot No. 4,. until he-comes into the-actual seisin and possession of “ the said- moiety, or other greater part of great, lot No. 3.” It was said, on the argument, and-it is embraced in one of.the points.of the-defendant, that according to the'second alternative above declared, if other property, together with part of lot No; 3, devised to Henry, by his uncle, amounted, “ in value,” to .an equal moiety of the said lot, that then the condition was satisfied ; especially, -if such other property consisted of real estate, in fee simple. This, I apprehend, is a mistaken view of -the meaning of the will. It should be borne in mind that the difficulty the testator .was endeavoring to obviate, or settle, was an anticipated dispute about what should be considered amoiety of- great lot No.. 3,- which his brother had engaged to give- to his son Henry; and. the -tests were prescribed ■ with a view to the accomplishment of this. purpose. - Different modes are -laid down, by which the-moiety might-be ascertained, and the intent of the condition complied with. The language of the clause also seems to me to be unambiguous, and -necessarily to limit the terms “moiety in value,” to “ part and parcel ” of lot No. 3. It is to be, “ in fee simple, the moiety, in value1 of the said great lot,” and not the value of a moiety of the same. Besides, the proviso is too explicit to leave any doubt upon the clause. By that, Henry is not to be divested of his estate in No. 4, until-he comes into the seisin and possession “ of the moiety or other greater part of great lot No. 3, as herein lefore mentioned;” obviously referring to the clause under consideration, and the different tests prescribed by the testator. -- The condition, then, I think it must be admitted is,: that- G-en.'Henry Livingston should- devise, or otherwise *173 assure the fee simple of a moiety in value of the said great lot No. 8, to Henry, the son of the testator. Has this condition been performed according to any of the rules prescribed by the testator John, the father of Henry and Herman ? I do not think that Gen. Henry has made any declaration in his will, that the part devised is to be deemed a moiety; nor has he called it a moiety of great lot No. 3, within the reasonable purport and meaning of the clause in this respect. That clause, no doubt, contemplated some formal provision, or deliberate action upon the subject; but I am of opinion that he has actually devised to Henry, the son of John, a moiety in value of the lot, in fee simple. He devised it in the first instance, by name and boundary to him and to H. W. L., in fee, and then provided for a division of the same into two equal parts, having due regard to quantity and quality, by a line running through the lot north and south. In running this line, the commissioners were directed to proceed in the valuation( without “ reference to any lease, or other conveyance made, or executed, of any part or parcel by him, the said Henry, or any of his ancestors ; and without regard to the rents reserved, or duration of the estates granted by such leases or conveyances to the tenants, or any other person.” After the division thus to be made, the commissioners were to cause a map and field book to be made of it, and entered of record in the clerk’s office; and such division, it was declared, should be final and conclusive upon all the devisees, their heirs and assigns. The part lying east of the line is then, in the most formal manner, devised to Henry, in fee, and that west of it to Henry W., in fee.
It is supposed, by the counsel for the plaintiff, that there are two conclusive objections to this view of the case. First. It is said that the Bruce lot, of one acre, the Dolph and Coon farms, of 50!) acres, devised to third persons for life, without rent, and the 120 acres devised in fee to I. L.' Livingston, out of lot No. 3, diminish the number of acres, or quantity of the lot, and postpone the occupation and enjoyment of it, and thereby, when taken into account, on the division by the commissioners, reduce the part allotted to Henry below a moiety in value, in fee. And second. That the legacy of Mrs. Patterson expressly charged upon the money given to Henry, and the contingent charge of a moiety of the legacies to E. J. P. and C. A. P., and also to the three colored females, Nancy, Betsy and Jenny, so diminish the quantity of interest in the estate of Henry as to prevent a moiety in value, in fee, passing to him by the devise. As to which I observe, First. That it is in proof that those four farms or lots are situate in the extreme western part of the great lot No. 3, and of course fall within the part devised to Henvy W. Livingston; and as has already appeared from the will, the commissioners were to disregard all leases, or other conveyances made by the testator or his ancestors and were to divide the entire lot. As to the Bruce lot, and the Dolph and Coon farms, there is not the slightest intimation that they were to be excepted out of the division of the lot, though referred to and devised, after the division was directed to be made. The exception following the devise of the 120 acres, in fee also, I think, implies that all these lots were to be deemed a part of great lot No. 3, in the division of it between the two devisees. After devising it the testator adds: “As this farm is a part of the aforesaid great lot No. 3, and is hereby devised in fee, I of course except this out of the devise herein before made of said great lot No. 3.” I am aware that it is possible that the testator Gen. Henry, intended, by this exception, to take the 120 acres out of the devise of great lot No. 3, before the division thereof between the two devisees, and if so, the lot would of course be reduced that number of acres, and the moiety of Henry would be less 60 acres ; and it may be conceded that such an interpretation might be given to the clause upon plausible grounds; but after the best consideration I have been able to give it, I am led to a different conclusion. The testator had before directed, with great particularity, the division of the whole lot into two equal moieties, quantity, and quality consid *174 ered ; and all leases, and every other species of conveyance, were to he overlooked, and the duration of the estates to be disregarded. The line was to be marked, field book and map made and recorded, and the division to be conclusive upon the parties ; and then a formal devise of the east half follows, to one of the devisees, and of the west half to the other. Thus vesting in each a general and distinct estate, in their respective moieties. When, therefore, the testator afterwards devised the 120 acres in fee to J. S. L., hying in that part of the lot before devised to H. W. L., it .was reasonable that he should make the exception mentioned; otherwise the two clauses would have been repugnant. This view seems to me to afford a natural and rational exposition of the clause. The executors are directed to lay off and locate the 120 acres, so as to include the dwelling house of J. S. L., but the commissioners empowered to make partition had nothing to do with it; and we in vain look for any clause or intimation in the will requiring or authorizing them to exclude it, or any other piece or parcel of the great lot in making the division. 'If the testator had intended to except it out of the division, as well as out of the devise, he would have said so; especially, after the specific direction already given to the commissioners: enjoining upon them' to make the valuation, without reference to leases, or other conveyances. He meant to cause the entire lot to be divided without regard to the manner in which any part of it was held by the tenants, or other occupants. Assuming, no doubt, that a division by the line designated, quantity and quality alone considered, would be just and equitable between the devisees.
Secondly. Though the literal ierms of the condition have been fully complied with according to the foregoing view, yet as we are bound to look to its substance and effect upon the rule of construction already referred to, we admit the performance fails if the estate in fee of the moiety is encumbered by annuities and legacies so as seriously to diminish the value of it. Contingent charges, however, upon this rule of construction should be laid out of consideration, if it is affirmatively shewn that they will not with reasonable certainty fall upon the estate. A literal or prima facie performance being established, it would seem to devolve upon those disputing it, to produce the evidence repelling a subtantial performance. A remote possibility of a charge, if sufficient for this purpose, may undoubtedly be rebutted. It may or may not affect the interest or value of the estate, and therefore is necessarily under the control of the facts of the particular ease. The funds of the testator may be so large and ample, that the contingent charge of the legacies and annuities in this case would not, in the market, or in fact in the slightest degree, diminish the value of the moiety. This was asserted to be the situation of the funds of’ the estate in this case, and proof of it was offered by the counsel for the defendant. The evidence was proper; and if the fact could be established, looking at a substantial performance of the condition upon which the estate of. the defendant depends, I am of opinion it ought to have been received.
There is more difficulty in respect to the annuity of $250 to Mrs. Patterson, it being charged in express terms on the moiety of the defendant. There is, however, some doubt whether this charge should be considered otherwise than in aid of the estate, real and personal, not otherwise specifically disposed of by the will. The residuary clause is as follows : “ I give and bequeath all the rest and residue of my estate, real and personal, after my said estate shall be settled and my devises herein mentioned take effect, and after my legacies herein before given are satisfied and annuities paid, then such rest-and resid.ue of my said estate I give, devise and bequeath to the before named Henry Livingston and Henry W. Livingston, in equal parts, share and share alike.” The only annuities given are to Mrs. Patterson and the three colored females, and the ’danse must of course refer to all or some of them. I am aware it may 'be said, with some propriety, that it was intended to refer to the latter, as they were to be satisfied out of the *175 fund-not specifically..disposed of.; still no discrimination is made between them,, and, if important, I think it.might very well be -maintained that the testator intended to include all of them.- As however this residuary fund is given to the two devisees charged with the annuities- of Mrs. Patterson, it is not very material whether they are deducted.before or after it comes into their-hands: The effect as to their interest :-is. exactly the..same. . It was intended that this residuary.fund should be. first-exhausted before the real estate charged should be liable — then this annuity falls within the view before taken of the contingent charges upon it;- and if the fundís sufficient, the moiety is unaffected. ■ I am,, -however,, disposed to take still broader.-ground .in respect to this annuity, and- to say, that even assuming it to be the intent of the will of Gen. Henry, that the moiety given to-his nephew-Henry should be exclusively chargeable, .with it, if the other property, de.vised by him, to Henry.,is sufficient to cover it, the condition has been satisfied according to its substance .and effect, and the fair and reasonable meaning of .the will of John Livingston.. Has not'Henry received- the- fee'simple of the.moiety in value of lot No.-3 — -the. condition required? This .is indisputable. But it is said the annuity of $250 so. far-in, effect diminishes the interest and .value of the fee.' This. I admit, and unless paid*, it must be taken out of the estateBut if Henry has otherwise, received from his uncle more than sufficient to pay it, is not the inference a fair one that he has in effect received the moiety in fee ? He has the legal title, and , there is an. equivalent, against the incumbrance. No one, I think, would deny the soundness of this conclusion, if Gen. Henry had directed these funds-to be applied to the' extiguishment of. the charge. -In judgment of law, -the estate would, then be free and unincumbered, as much so as if actually applied. Looking.-at the. whole transaction, and'the plain meaning of the father of Henry, this direction does not seem, to me important. The gift of the .fund from Gen. Henry, is sufficient for the purpose, and the ability to apply it or not, are the material .facts.
Taking into view, all the devises and bequests to Henry in the will of his uncle, all the property, there transferred to and vested in him, and assuming what was offered to be proved, .that these.funds were ample to cover the annuity, it may with confidence be asserted that Henry has received, and his children now actually enjoy, a moiety in fee of-lot-number three, within,the meaning of his father’s will.
New trial granted.