OF THE

## STATE OF IOWA

AT

### DES MOINES, OCTOBER TERM, A. D. 1894

AND IN THE FORTY-EIGHTH YEAR OF THE STATE.

STATE OF IOWA *ex rel.* J. W. CROSSLAND V. OMAHA & COUNCIL BLUFFS RAILWAY & BRIDGE COMPANY OF IOWA, AND THE OMAHA AND COUNCIL BLUFFS RAILWAY & BRIDGE COMPANY OF NEBRASKA, Appellants.

Forfeiture of Corporate Charter: NONCOMPLIANCE WITH ORDINANCE. A company was duly incorporated in Iowa to maintain street car lines in Council Bluffs and Omaha, and a bridge between said cities. Council Bluffs passed an ordinance conditioning this franchise upon, that the company should conform its road making to surface of streets or, else, to the grades of streets then established or to be established, that whenever the city paved, the corporation should pave in like manner between tracks, that it should make good to abutting owners all damage done to existing paving, by track laying

(517)

and that all streets should be restored to as good condition as they were in before track laying. The authority given by this ordinance and its obligations extended to the corporation and to it assigns. Council Bluffs voted a tax to aid the corporation. Later, congress gave a Nebraska corporation similar powers, for Nebraska and Iowa. The latter never incorporated in Iowa. The Iowa corporation, by contract, sold said tax to the Nebraska one, and, in consideration of stock transferred by the latter to the former, the Iowa one leased to the other its entire plant, for twenty-five years. The bridge was properly constructed, and the line properly operated. The same men, largely, were officers of the two corporations, and the Iowa one, after the consummation of said arrangement, held no more regular meetings and did no more business. There was a failure to conform track laying to the surface of unpaved streets, streets were not put into as good condition as they were in before track was laid, and abutting owners were not paid for paving previously laid. Some streets were obstructed by the making of railway. Neither company is insolvent. *Held:*

a. Said failures do not warrant a forfeiture of the charter, where the public good requires the further existence of the corporation.

b. No fraud is shown in the transfer from one corporation to the other; the purpose was to avoid complications growing out of the interstate powers given by congress.

c. The failure to incorporate in Iowa, appearing to be due to a mere misapprehension, should not work a forfeiture of charter, if the Nebraska corporation shall incorporate, here, within a time fixed.

DEEMER, J., took no part.

*Appeal from Council Bluffs Superior Court.*—HON. J. E. F. McGEE, Judge.

TUESDAY, OCTOBER 2, 1894.

THIS is a civil action by ordinary proceeding under chapter 6, title 20, of the Code, wherein the plaintiff asks, for reasons alleged, that the charter and franchise of the Iowa corporation "be ordered and adjudged forfeited, and the same be canceled and the said corporation dissolved, and that the defendant the Nebraska corporation, as well as the defendant the Iowa corporation, be required to show cause, if there be any, why such order and judgment should not pass;" that all the rights and privileges conferred on said Iowa cor-

poration by its corporate organization, and by virtue of a certain ordinance of the city of Council Bluffs passed in 1886, and all rights or privileges claimed by defendants, or either of them, under or by virtue of said corporate existence and franchises, and all rights and privileges claimed to be·held by said Nebraska corporation by virtue of its purchase of the stock and lease of the property of the Council Bluffs Street Railway Company, or by virtue of said ordinance of 1886, be forfeited and canceled and annulled; and that defendants be prohibited from the exercise of any of said rights, privileges, or franchises. Defendants answered, admitting their corporate organization as alleged, and the execution of the contract set out as "Ex. A," and denying every other allegation in the petition. The case was tried to the court, and judgment entered against the defendants substantially as prayed, and trustees appointed, to all of which defendants excepted, and from which they appeal, assigning as error the entering of said judgment. Other errors are assigned upon the admission and exclusion of evidence, but as they are not argued they will not be considered.—*Reversed and Modified.*

. *Wright & Baldwin* for appellants.

*Harl & McCabe* and *Spencer Smith* for appellee.

Given, J.—I. In 1868, the city of Council Bluffs granted to the Council Bluffs Street Railway Company the right to construct and operate a street railway on certain streets, and requiring it to construct additional lines to any depot or ferry thereafter opened in the city. Said company constructed and operated a single track horse railway on various streets until 1888. October 20, 1886, the defendant, the Iowa corporation was duly organized under the laws of this state, its second article being as follows: "The general nature

of the business to be transacted by this corporation shall be to construct, operate and maintain a bridge across the Missouri river at and opposite the cities of Omaha, Nebraska, and Council Bluffs, Iowa, and also a steam, electric, motor, horse, elevated, cable, or other line of railway, and a public way across said bridge, and within the counties of Douglas, Nebraska, and Pottawattamie, Iowa, with the termini thereof in the said cities of Omaha and Council Bluffs. This corporation shall have and possess all the powers given it by law, and such as are usually incident to corporations of this character; and among which is the power to make contracts, acquire and transfer all kinds of property necessary to the transacting of its business and including the right and power to borrow money on notes, bonds and mortgages, and to secure the payment of the same by pledging all or any portion of its property and its income for such purpose, provided that the indebtedness of the company shall at no time exceed the capital stock paid in." October 29, 1886, an ordinance of the city of Council Bluffs was approved, providing "that consent, permission, and authority is hereby given and granted to and vested in the Omaha & Council Bluffs Railway and Bridge Company, and its successors and assigns, to construct, equip, maintain and operate, for the term of twenty-five years, upon the conditions hereinafter found, a single or double track street railway," etc. Among the conditions thereinafter found are the following: "The tracks of said company shall be laid so as to conform to the established grade of any street on which the road may be built, wherever the city has or hereafter may establish such grade. Where the streets are not graded said company may lay its tracks so as to conform to the surface of such streets, but that said company shall grade its roadbed and conform to the established grade of all streets at its own expense,

where it is authorized to lay down tracks under this ordinance, whenever the city shall establish the grade of such or any part thereof. In case the city shall at any time pave any street along which said railway may run, said company shall at its own expense, at the same time, with the same material, pave the space between the rails of its track and one foot outside of the rails, so that it shall substantially correspond with the paving of the street outside of the rails and track.

Where tracks are laid upon a street already paved, the company shall pay the property owners abutting for the paving between the rails, and one foot outside thereof. And in laying its tracks, said company shall restore said streets, whether paved or not, to as good condition as before the laying down of its tracks thereon; and shall conform to all grades and keep water ways and culverts in good repair at its own expense for the passage of water along or across its tracks." October 30, 1886, said ordinance was accepted by said Iowa corporation. On November 2, 1886, the voters of the city of Council Bluffs voted a tax of twelve mills for the purpose of aiding said Iowa corporation "in the construction of a highway bridge over the Missouri river at a point commencing at the foot of Broadway street or within three hundred feet thereof, on either side, in the city of Council Bluffs, Iowa, at and opposite the same in Iowa, and terminating opposite the city of Omaha, Nebraska." March 3, 1887, an act of congress was approved, providing that "the Omaha & Council Bluffs Railway & Bridge Company, an incorporation organized under the laws of the states of Nebraska and Iowa, its successors or assigns, is hereby authorized to construct and maintain a bridge across the Missouri river at the point between the cities of Omaha, Nebraska and Council Bluffs, Iowa, and at least one third of a mile from any other bridge, as shall best promote the public convenience and welfare."

April 1, 1887, the Nebraska corporation completed its organization by executing and filing articles in Nebraska as required by the laws of that state, under the name of the Omaha & Council Bluffs Railway & Bridge Company, the purpose being as follows: "The general nature of the business to be transacted by the corporation shall be, in connection with the Omaha & Council Bluffs Railway & Bridge Company of Iowa (a corporation organized and existing under the laws of the state of Iowa), to construct and operate and maintain a bridge across the Missouri river at and opposite the cities of Omaha, Nebraska, and Council Bluffs, Iowa, and also a steam, electric, motor, horse, elevated, cable, or other line of railway, and a public way across said bridge, and within the counties of Douglas, Nebraska, and Pottawattamie, Iowa, with the termini thereof in the said cities of Omaha and Council Bluffs."

May 14, 1887, the Iowa corporation and the Nebraska corporation entered into a contract in writing by which the Iowa corporation "hereby sells, assigns, transfers, and sets over" to the Nebraska corporation "said tax voted by the voters of Council Bluffs." Said Iowa corporation also "hereby lets, leases, grants, and gives" to said Nebraska corporation "for the term of ninety-nine years, * * * all the said party of the first part's rights to interest and property" under said ordinance of October 29, 1886, and said act of congress, in consideration whereof the Nebraska corporation "hereby undertakes and agrees to give, in full consideration thereof, to the said party of the first part, for the benefit of its stockholders, one half of all the shares of the full paid up capital stock of the said Omaha & Council Bluffs Railway & Bridge Company of Omaha, Nebraska." October 1, 1888, the Nebraska corporation leased from the Council Bluffs Street Railway Company, for a consideration and upon conditions that need not be stated, for the term of twenty-

five years, its entire system and property of every kind. After the transfer by the Iowa corporation to it, the Nebraska corporation constructed a bridge across the Missouri river, and a double track electric motor line connecting the two cities, to the business center of each, and three branch lines in Council Bluffs. A power house was erected and equipped in Council Bluffs, and necessary rolling stock provided. This work was completed in December, 1888, since which time the Nebraska corporation has managed and operated said bridge and railway without having qualified itself to do so as required by chapter 76, Acts, Twenty-first General Assembly. The Nebraska corporation received the tax voted by Council Bluffs to aid in the construction of the bridge, and in July, 1887, executed a mortgage upon its property and franchises then held or thereafter to be acquired, to secure its bonds for five hundred thousand dollars, the proceeds of which, and of said tax levy, were paid on the construction of the work. It is not questioned but that the railway and bridge were properly constructed and equipped, and have since been properly managed and operated. The complaint is that section 3 (copied above) of said ordinance of 1886 was not complied with, in the following particulars: That the line on Avenue A, Council Bluffs, was laid on an embankment formed of earth taken from the sides of the street, whereby the street was rendered impassable, and was allowed to so remain for over two years, when the city filled the excavations; that, in laying tracks in streets where no grade had been established, the tracks were not laid to conform to the surface of the ground; that tracks were laid upon streets previously paved, "but no attempt was made to pay for the paving used, to abutting property owners." The evidence shows that stock of the Nebraska corporation was delivered to the Iowa corporation as agreed, and that the Iowa corporation

has not since held regular meetings, or transacted any business. It also shows: That an action was brought by the relator and others, for themselves and assignees of the claims of others, against the Nebraska corporation, to recover five thousand and seventy-five dollars and forty-six cents due for paving in front of their properties, laid previous to the construction of the tracks. The defendant answered, setting up the leases to it from the Iowa corporation and from said street railway company, and denying liability to the plaintiffs. That the city of Council Bluffs brought a like action to recover five thousand, four hundred and thirty-one dollars and thirteen cents for money paid for paving intersections which were paved prior to the laying of defendant's tracks at such intersections; also, to recover for filling the excavations on Avenue A. Defendant answered, denying that there was any statute entitling plaintiff to recover for the previous paving of intersections, and denying that it had anything to do with laying the track referred to, and alleging that it was laid by said street railway company.

Such are, in substance, the material facts upon which we are to determine whether the lower court erred in rendering the judgment that it did.

II. Subdivision 4 of section 3345 of the Code authorizes actions like this "against any corporation doing or omitting acts which amount to a forfeiture of their rights and privileges as a corporation, or exercising powers not conferred by law." Section 3356 provides "if a corporation be found to have violated the law by which it holds its existence, or in any manner to have done acts which amount to a surrender or forfeiture of its privileges, judgment shall be rendered that such defendant be ousted and altogether excluded . from such * * * franchise or privileges." Our first inquiry is whether the Iowa corporation had done or omitted acts which amount to a forfeiture of its

rights and privileges as a corporation, or exercised powers not conferred by law, or, in the language of section 3356, whether it has "violated the law by which it holds its existence," or has, in any manner, "done acts which amount to a surrender or forfeiture of its privileges." As the statute does not define what acts, omissions, or violations of law will amount to a surrender or forfeiture of corporate existence or privileges, we must refer to the common law to determine that matter. All corporations derive their right to exist and act as such from the state, and all public and quasi public corporations, in addition thereto, are vested by the state with certain special privileges wherein the general public are interested. In return, the corporation becomes bound to perform toward the public all the conditions upon which its right to exist and its special privileges are granted. For a concise statement of the distinction in the several classes of corporations, see *Ditch Co. v. Zellerbach*, 37 Cal. 543. This corporation being organized under the general laws of the state, they, with its articles of incorporation, "create the same relation between the state and the corporation which would exist if the general laws applicable to the corporation, and the articles of incorporation were embodied in a special act of the legislature creating the corporation and defining its general powers." *State v. Central Iowa Railway Co.*, 71 Iowa, 415, 32 N. W. Rep. 409. A failure to substantially comply with the express provisions or conditions of the articles and of the general laws, or a willful misuse or nonuse in regard to matters which go to the essence of the contract between the corporation and the state, are acts and omissions which amount to a forfeiture. Ang. & A. Corp., section 774; Boone, Corp., section 203; Mor. Priv. Corp., 1014; Tayl. Corp., section 457; Wat. Corp., section 427; *Ins. Co. v. Needles*, 113 U. S. 574, 5 Sup. Ct. Rep. 681; *State v. Minnesota Central Railway Co.*,

36 Minn. 246, 30 N. W. Rep. 816; *State v. Council Bluffs & N. Ferry Co.*, 11 Neb. 354, 9 N. W. Rep. 563; *State v. Farmers' College*, 32 Ohio St. 487. Courts act with extreme caution in proceedings like this, and forfeitures will not be declared, except under the express provisions of the charter, or for a plain misuse or nonuse of powers, by which the corporation fails to fulfill the design and purpose of its organization. *State v. Farmers' College, supra; State v. Commercial Bank,* 10 Ohio, 535; *Harris v. R'y Co.*, 51 Miss. 602; *R'y Co. v. People*, 73 Ill. 541; *State v. Real Estate Bank*, 5 Ark. 595; *State v. Societe Republicaine*, 9 Mo. App. 114. It is only such acts or omissions as concern matters which are of the essence of the contract between the state and the corporation, or, in other words, in which the public has an interest, that are causes of forfeiture. *Commercial Bank v. State*, 6 Smedes & M. 599; *Attorney General v. Petersburg & R. Railway Co.*, 6 Ired. 456; *Harris v. R'y Co.*, 51 Miss. 602; *State v. Council Bluffs & N. Ferry Co., supra; Thompson v. People*, 23 Wend. 538; *State v. Real Estate Bank, supra; State v. Minnesota Central Railway Co., supra.* A substantial performance of conditions is all that is required. *People v. Kingston & M. Turnpike Road Co.*, 23 Wend. 193; *People v. Fishkill & B. Plank Road Co.*, 27 Barb. 455; *People v. Williamsburgh Turnpike & Bridge Co.*, 47 N. Y. 586; *Commercial Bank v. State, supra; State v. Wood*, 84 Mo. 378; *State v. Farmers' College, supra; Chicago City Railway Co. v. People*, 73 Ill. 541; *Harris v. R'y Co., supra.* In *Commercial Bank v. State* it is said: "The law requires but a substantial compliance with conditions, and it is not rigid in enforcing forfeitures; yet if the utility of the corporation be lessened, or if an injury result to the public by an act which it is not authorized to do, it is a forfeiture." A failure to perform obligations to individuals or to other corporations is not ground of forfeiture, for the state does not concern itself with the

quarrels of private litigants. 1 Beach, Priv. Corp., section 8.

III. By the contract with the Nebraska corporation, the Iowa corporation transferred to it, absolutely, all its right to the tax voted in aid of the construction of the bridge, and leased to it all its rights and privileges under the act of congress and said ordinance of 1886 for the period of ninety-nine years. In return for this, the Nebraska corporation delivered one half of the shares of its paid-up capital stock to the Iowa corporation, for the benefit of its shareholders, to whom the same were distributed. Under authority of this contract, the Nebraska corporation constructed the railway and bridge in all respects as required by said act of congress and said ordinance of 1886, except that in laying the tracks in streets where no grade had been established the tracks were not laid to conform to the surface of the ground, and it did not restore streets in which tracks were laid to as good condition as before laying the same, or pay to abutting property owners for paving previously laid.

Under this contract, the Nebraska corporation has operated this railway and bridge in all respects, as far as alleged or appears, with due regard to the public interests, and in accordance with said act of congress and said ordinance. It is contended that this transaction between these corporations was consummated with intent to defraud the public. We do not concur in this view. We are satisfied that the thought of organizing the Nebraska corporation was first suggested by the language of the act of congress, the grant therein being to "the Omaha & Council Bluffs Railway & Bridge Company, an incorporation organized under the laws of the states of Nebraska and Iowa." We are satisfied that it was organized with the view of placing the right to the grant from congress beyond question. The two corporations were

composed of and officered by the same men, and they
were organized by the same name and for the same
purpose.   The Nebraska corporation was organized, as
is said in its articles, for the same business to be trans-
acted in connection with the Iowa corporation.   The
purpose of the transfer and lease was, we think, to
place the construction and operation of the railway and
bridge in the hands of one company for the period
named, to avoid complications that were likely to arise
if both organizations were to exercise control in the
construction and operation of the road and bridge.
This may not have been the legal or best mode of ac-
complishing the end, but such we think was the pur-
pose.   We fail to discern wherein there was any fraudu-
lent intent, for, surely, the obligations of each com-
pany to the public and to individuals remained the
same as before the contract, and it is not alleged that
either was insolvent.   The lease taken by the Nebraska
company from the Council Bluffs Street Railway Com-
pany does not indicate an intention to defraud, nor
does the fact that the Nebraska company claimed cer-
tain rights under that lease in the actions against it
indicate such an intention.   It is not fraud for that
corporation to claim whatever rights it may be entitled
to under that lease.   However irregular or illegal the
course pursued by the defendant companies may have
been, we are satisfied it was in good faith, and
without any fraudulent purpose.   Let it be con-
ceded, as claimed, that said contract was un-
authorized, is in violation of the contract with the
state, and void; that the failure to lay the tracks to
conform to the surface, to put the streets in as good
condition as before the tracks were laid, and the failure
to pay abutting owners for paving previously laid, are
violations of conditions in the charter of the Iowa cor-
poration, still the question remains whether, even for
such violations, we should adjudge a forfeiture against

that corporation. It is not expressly provided in its articles, or in the statute, that such violations amount to a forfeiture. If it was so provided, it would only remain for the court to determine whether such violations had occurred, but, not being so expressly provided, the court is vested with a discretion, and may refuse a judgment of ouster, if in its opinion the interests of the public do not require such a judgment. *State v. Oberlin Building & Loan Ass'n*, 35 Ohio St. 258; *State v. Peoples' Mut. Ben. Ass'n*, 42 Ohio St. 579; *State v. Minnesota Cent. R'y Co.*, 36 Minn. 246, 30 N. W. Rep. 816; *State v. Crawfordsville & D. Turnpike Co.*, 102 Ind. 435, 1 N. E. Rep. 864; *State v. Essex Bank*, 8 Vt. 489; 2. Spell. Ex'tr. Rel. p. 1493. While it may be true the Iowa corporation did lease all its "interests and property" under said act of congress and said ordinance, for the term of ninety-nine years, still it exists to-day as a corporation subject to all the liabilities imposed upon it by said act of congress and said ordinance. It is the owner of said bridge and railway, subject only to the rights of the Nebraska corporation and its mortgagees therein; and, if from any cause the rights of the Nebraska corporation are terminated, the Iowa company is entitled to take possession, control, and management thereof, and to operate the same so as to carry out its obligations to the public. Surely, it can not be said that this corporation has abandoned its right to corporate existence, or that all necessity for its existence has passed away. In case of forfeiture or failure on the part of the Nebraska company, this public enterprise, that has been thus far conducted with general satisfaction to the public, must fail and be terminated, if the Iowa corporation may not be continued in existence to meet such an emergency. It seems to us the public interests demand that the corporate existence of the Iowa

company shall not be forfeited, but shall continue to exist, to the end that it may respond to its obligations to the city, to individuals, and to the general public.

IV.  We next inquire as to the Nebraska corporation. The court below held that the contracts between the defendant and the contract between the Nebraska corporation and the Council Bluffs Street Railway Company were *ultra vires* and void; that the Nebraska corporation was a foreign corporation, and had failed to comply with the laws of Iowa authorizing such foreign corporations to exercise their corporate functions and franchises in this state, and that it had no legal right to exercise corporate privileges or functions within the state; that the provisions of the ordinance requiring payment to abutting property owners for paving done previous to laying down tracks was a condition precedent to the use of the franchise granted by the ordinance, and that the refusal of the defendants to comply therewith was a willful repudiation of the condition; that the obstructions created by the Nebraska corporation in Avenue A, and a failure to construct the line in accordance with the ordinance, was in violation of law, contrary to public policy, and a willful misuser and abuse of the franchise granted by the ordinance.

It was upon these conclusions that judgment was entered ousting the Nebraska corporation from the exercise of any or all privileges exercised by it in the city of Council Bluffs, and of any rights, privileges, or franchises under either of said two written contracts. Again, we have to say that, conceding these conclusions to be correct, still the question remains whether the public interests require that such a judgment be entered against the Nebraska corporation. As already stated, the railway and bridge were constructed and operated with due regard to the pub-

lic convenience and interests.    To warrant this judg-
ment there must have been a willful or improper act or
neglect, such as to work or threaten a substantial in-
jury to the public.    "The transgression must not be
merely formal or incidental, but material and serious,
such as to harm or menace the public welfare."    1
Beach. Priv. Corp. section 58.    "A charter will not be
revoked for every wrongful act committed by a corpo-
ration.    A single act of abuse or willful nonfeasance
may be a ground for 'a forfeiture; but where an act of
nonfeasance has not been committed willfully or negli-
gently, and does not injure anyone, and is not ex-
pressly forbidden by the charter, the courts will not, in
general, apply the severe remedy of a judgment of for-
feiture."    4 Am. & Eng. Enc. Law, p. 306.    In *People
v. Bristol & R. Turnpike Road Co.*, 23 Wend., at page
236, it is said:    "The transaction before us goes on cor-
porate default, corporate wrong, which must, I think, be
more than accidental negligence, or a mere mistaken
exercise of power, or a mistake in the mode of exercising
an acknowledged power.    There must be an abuse of
trust," etc.    The Nebraska corporation was organized
under the laws of that state, and it is true that it did
not make application for, nor receive a permit to trans-
act the business that it did in the state of Iowa, as re-
quired of foreign corporations by chapter 76, Acts,
Twenty-first General Assembly; McClain's Code, sec-
tion 1641, and following.    The only explanation given
for this omission is found in the answer of the defend-
ants to interrogatories propounded by the plaintiff, as
follows:    "The Nebraska corporation was organized,
as shown by its articles of incorporation, in connection
with the Iowa corporation, and as a part and parcel of
the Iowa corporation; the president and secretary of
the Nebraska corporation having always resided in
Council Bluffs, Iowa, since the organization, and, by
the articles of incorporation, one half of the board

of directors must and do reside in Iowa.'' In view of the severe penalties provided in said chapter 76, we can not think that the omission to take out a permit was the result of mere negligence. We are convinced that a permit was not applied for under the belief that it was not required, because of the character and relations of the two organizations, of the business to be transacted, and the place at which it was to be transacted. This was a mistaken belief, but, if these corporations proceeded under that belief, they did not act willfully, or with any wrongful intent. We think the Nebraska corporation was guilty of illegally holding and exercising the franchises and privileges that it did in Iowa without first having a permit to do so, but we can not see that it will serve the interests of the public to unqualifiedly exclude that corporation from those franchises and privileges in the future, when it can so readily qualify itself to exercise them. As to the conditions provided in the ordinance, upon the disregard of which the judgment was based, we think the city and the abutting property owners have ample remedy in the ordinary processes of the law, and that the general public is not interested in any questions that may arise between them and either of the defendants, based upon said conditions. We are clearly of the opinion, upon the whole record, that, though the Nebraska corporation has heretofore unlawfully exercised its corporate powers in this state, yet that there is no public interest demanding that it shall be unconditionally ousted from the exercise of said privileges and franchises. Nor do we think that it should be thus ousted for any of the other reasons assigned.

Our conclusion is, that the judgment of the district court, as to the defendant, the Iowa corporation, should be reversed, and that the judgment as to the Nebraska corporation should be modified so as to take

effect within sixty days after final judgment, unless said Nebraska corporation shall show to the court that it has qualified itself to exercise its corporate functions in this state by compliance with said chapter 76 of the Acts of the Twenty-first General Assembly. *Reversed in part, and modified and affirmed in part.*

DEEMER, J., taking no part.