THE STATE ex inf. HADLEY, Attorney-General, v.
DELMAR JOCKEY CLUB, a Corporation.

**In Banc, December 18, 1906.***

1. **QUO WARRANTO: Practice: Motion for Judgment on Pleadings.** A motion by the State for judgment on the pleadings, after information by the Attorney-General and demurrer thereto by respondent, in a *quo warranto* to oust a corporation because of a misuser of its franchises, is unnecessary, since judgment, as a matter of course, must be for the State, if the demurrer be not sustained and respondent does not plead over.

2. ————: **Demurrer.** A demurrer to the information in *quo warranto*, in legal effect, admits every material allegation of fact, even acts charged to be in violation · of law, but not the legal conclusions, if any, stated in the information.

3. ————: **Corporation: Misuser of Franchise: Violation of Law: Felony.** A corporation may be ousted of its franchises for a violation, through its officers or employees, of the criminal law, although such violation is a felony, and such officers or employees have not been convicted or indicted therefor. A corporation as such cannot commit a felony, for there can be no felony without a criminal intent; but the officer of a corporation, in charge of its affairs, may as such do that which the statute declares to be a felony, in like manner as he may do that which the statute declares to be a misdemeanor, and a commission of that felony by such officer is a ground for ousting the corporation of its franchises, as for a misuser or perversion thereof, in like manner as it would be were the act a misdemeanor.

4. ————: ————: **Forfeiture: Illegal Act.** The charter of a corporation is a contract with the State that it will not misuse or pervert its franchise, and that it will not engage ·in the doing or carrying on of any business which is unlawful or immoral.

5. ————: ————: ————: **Non-User: Agriculture Fair.** The charter of a corporation is a contract with the State that it will use the franchise therein granted, and for non-use thereof its charter may be forfeited. And where respondent was incorpor-

---

* Note.—Decided on demurrer December 22, 1905, and leave granted respondent to plead over, and opinion held back to await final disposition of cause, and delivered December 18, 1906. Answer being filed, opinion on issues was filed November 22, 1906, and motion for rehearing overruled December 18, 1906.

ated to promote agriculture, to establish and maintain fair grounds and a race track, and to give public exhibitions of agricultural products and of races between horses, etc., a failure to comply with its charter in that respect will work a forfeiture.

6. ———: ———: State Estopped: Receiving Funds. Where the State recognized the validity of the law from which the defendant corporation derived its power to engage in book-making and pool-selling, by appropriating, in specific words, the money "received into the State Treasury from pool-selling and book-making" from defendant during the years it is alleged defendant engaged in book-making and pool-selling, the State will not be permitted to say that the law under which defendant operated its pool-selling and book-making business was, for these years, invalid as being unauthorized by the organic law.

7. ———: ———: Selling Pools to Minors: Respondent's Knowledge. Selling pools to minors and registering their bets, being expressly prohibited by law, will work a forfeiture of the corporation's charter. Nor is it necessary that the information charge that respondent knew that the purchasers were minors.

8. CONSTITUTIONAL LAW: Double Title: Book-Making and Pool-Selling. The act of 1905, entitled, "An act prohibiting book-making and pool-selling and prescribing a penalty therefor," is not unconstitutional as containing two subjects. Pool-selling and book-making are both congruous and germane to the one subject of horse racing.

9. ———: Reasonable Doubt. The court will not declare a law to be unconstitutional unless it is of the opinion, beyond a reasonable doubt, that it is unconstitutional.

10. QUO WARRANTO: Judgment on Pleadings: Non-User: General Denial. A general denial in respondent's return to the State's information in a quo warranto to oust it of its corporate franchises, followed by another plea which amounts to a plea of confession and avoidance, does not raise the issue of non-user charged in the information; and, hence, on the State's motion for judgment on the pleadings, unless the matters set up in the plea of confession and avoidance are not a sufficient legal excuse for defendant's failure to use its franchise for the beneficial purposes set forth in its charter, the motion will be sustained, notwithstanding the general denial.

11. ———: ———: ———: Race Track: Agricultural Purposes: License Fees Paid to State. A corporation organized to promote agriculture and the improvement of stock by giving exhibitions of agricultural products and of speed of horses, to establish and maintain a fair, and to engage in pool-selling

and book-making, does not avoid a forfeiture of its charter for non-user for failure to hold the agricultural exhibitions, by a showing that under a statutory requirement, it charged license fees for pool-selling and book-making and paid those fees into the State Treasury and they were used by the State to promote agricultural exhibitions, etc., at the State Fair.

12. ———: Corporations: Non-User or Misuser: Forfeiture. For no insignificant act of either non-user or misuser of its corporate franchises will the courts forfeit the charter of a corporation. But the forfeiture will be declared for willful non-user, willful misuser, or usurpation of powers not granted.

13. ———: ———: Forfeiture: Non-User: Failure to Use Principal Right. If the franchise or right granted to a corporation is the principal one in which the State is interested and is the very essence of the contract between it and the State, and there is a willful non-user thereof by it, a forfeiture of its charter will be declared.

14. ———: ———: ———: ———: Fair: Promotion of Agriculture: Horse-Racing and Gambling. A failure for four years to give exhibitions of agricultural products at its fair grounds by respondent corporation, which was the franchise in the exercise of which the State and public had the most concern, and its alertness in promoting gambling upon horse racing which was the incidental feature of its charter, were a willful and flagrant non-user of its franchises, and demand a forfeiture of all the rights and franchises granted it and a dissolution of the corporation.

15. ———: ———: ———: Fine and Taking of Property. For a willful non-user of its franchise by a corporation, a fine or the taking of its property may be added to the judgment of ouster. That can be done whether the judgment of ouster be placed upon misuser, non-user or usurpation of rights. But in this cause no fine is imposed, and no property forfeited to the State.

## Quo Warranto.

Writ of Ouster awarded.

*Chester H. Krum* and *Bond & Bond* for respondent on demurrer.

(1) A corporation cannot commit a felony. 1. The portion of the information which relates to acts of book-making and registration of bets, to acts of permission

to others to make books or register bets and to keeping
and using devices for recording bets—all done after
June 16, 1905—does not state violations of law by the
defendant, because the act of March 21, 1905, prohib-
iting book-making and pool-selling, denounces a felony.
Laws 1905, p. 131; State v. Melton, 117 Mo. 618; State
v. Clayton, 100 Mo. 516; State ex rel. v. Foster, 187 Mo.
590. 2. A corporation may commit an offense which
involves merely the consequences of a tort, but it can-
not commit a felony, or an offense involving the element
of malice or criminal intent. Com. v. New Bedford
Bridge, 2 Gray (Mass.) 339. (2) Upon the theory
that, when book-making was lawful under statutory
conditions, the defendant violated the statute, the infor-
mation fails to show infraction of the law. 1. That
portion which relates to general acts of book-making
done between January 18, 1901, and June 16, 1905, does
not show violation of the law, because, *non constat,* the
defendant was a licensed book-maker. R. S. 1899, sec.
7419. There is no averment that the defendant was
not a licensed book-maker. If it was licensed, its acts
were lawful. 2. That portion which relates to sales of
pools to and accepting bets from minors between Jan-
uary 17, 1901, and June 16, 1905, does not state viola-
tions of law, because it is not alleged that the defendant
was a licensed book-maker. R. S. 1899, sec. 7422.
None, other than a licensed book-maker, is prohibited
from dealing with minors. In the absence of an aver-
ment that the defendant was a licensed book-maker,
the information does not state violations of the statute.
This is obvious from an inspection of the section. (3)
The information does not state facts upon which a
judgment of ouster can lawfully be based. 1. To
violate a criminal statute is not the usurpation, or
misuser, of a franchise. *Quo warranto* will not lie to
punish mere infraction of a criminal statute. Atty.-
Gen. v. Salem, 100 Mass. 138. 2. In the absence of

statute *quo warranto* will not lie to test the legality of acts of a corporation not amounting to the usurpation of a franchise. State ex rel. v. Gravel Road Co., 187 Mo. 439; State ex rel. v. Hannibal, etc., Co., 37 Mo. App. 504; State v. Railroad, 50 Ohio St. 239; Comm. v. Bala, etc., Co., 153 Pa. St. 47; State v. Thresher Co., 40 Minn. 213. (4) The information proceeds upon an hypothesis repugnant to the law of the land. 1. The corporation cannot commit a felony denounced by the statute. Here the acts complained of were the criminal acts of certain "officers, agents, employees and representatives," who were not authorized to act for the corporation. There is no averment that they were so authorized. 2. The information thus proceeds against the corporation for the unlawful acts of unauthorized persons, who are not even named or designated. 3. The proceeding by *quo warranto,* therefore, is to be turned into a criminal prosecution of certain undesignated individuals, without indictment, or verified information, without notice to those involved, and without jury, and upon the determination of their guilt, and upon inquiry not addressed against them, the corporation is to be ousted of its franchise. There is and can be no warrant of law for such a proceeding. State v. Carneal, 10 Ark. 162; State v. Hixon, 27 Ark. 398; State v. Wilson, 30 Kan. 661; Lord Bruce's Case, 2 Strange 819.

*Herbert S. Hadley,* Attorney-General, and *John Kennish* and *N. T. Gentry,* Assistant Attorneys-General, for informant on demurrer.

(1) A proceeding by information in the nature of a *quo warranto,* filed in this court by the Attorney-General, is a civil suit, and the sufficiency of such information as a pleading is tested by the rules of the common law and not by the code of civil procedure. State ex inf. v. Beechner, 160 Mo.

86; State ex. inf. v. Vallins, 140 Mo. 523; State ex. inf. v. Equitable L. & I. Co., 142 Mo. 335; State v. Standard Oil Co., 61 Neb. 33; State ex rel. v. Reed, 11 Colo. 138; 2 Spelling on Inj. & Extra. Remedies, sec. 1766; 17 Ency. Pl. & Prac., pp. 466-7. (2) Misuser or nonuser of franchises by a corporation is a sufficient basis for a judgment of ouster. 5 Thomp. on Corp., sec. 6609; Turrett v. Taylor, 9 Cranch 51; State ex. inf. v. Equitable L. & I. Co., 142 Mo. 340; State ex. inf. v. Lincoln Trust Co., 144 Mo. 562; 10 Cyc., 1280; 2 Spelling, Ex. Rlf., sec. 1513; High's Extra. Leg. Rem., secs. 648-9. (3) An information may set up as many different causes of forfeiture as the Attorney-General may think proper, and it is not demurrable for that reason. State v. Railroad, 45 Wis. 585; State v. Manhattan Co., 9 Wend. (N. Y.) 351; State v. Railroad, 117 Cal. 604. (4) The acts set forth in the information and referred to in respondent's first ground of demurrer, were violations of the laws of this State, unless the person doing such acts had first obtained a license so to do. Sec. 7419, R. S. 1899. A corporation could not be so licensed for the reason that the statute authorizes the issue of such license only to persons of good reputation and good character, and respondent not being a person, could not obtain such license. Sec. 7420, R. S. 1899. (5) It was not necessary to allege that respondent was licensed or not licensed in order to charge a violation of law in selling pools, or accepting and registering bets from minors. As it was a violation of law in the doing of the acts charged against respondent, whether in the case of minors or adults, without a license, and as respondent could not legally have procured a license for the doing of such acts, it was, therefore, unnecessary to allege that it had such license. Secs. 7419, 7420, R. S. 1899. (6) The fact that the acts charged to have been committed by respondent, and made the basis of the forfeiture demanded, are made a

felony by statute, in no manner affects the right of the State in the premises, nor exempts the respondent from liability. People v. Society, 7 Lans. (N. Y.) 504; Bank v. State, 1 Blackf. (Ind.) 267; 5 Thomp. on Corp., pp. 6615, 6616. (7) The relief prayed for is not a test of the sufficiency in law of the information. State ex. inf. v. Armour Packing Co., 173 Mo. 392. The object of this suit is clearly not to compel the observance of a criminal statute, nor to punish the officers of respondent for the violation of such statute, but to have the charter of the respondent forfeited for an usurpation, misuser and non-user of franchises in violation of the laws of this State. (8) It was not necessary to allege in the information that the stockholders of respondent directed or authorized the doing of the acts charged. In a proceeding by the State to forfeit the charter of a corporation for misuser of the franchises the misprisions of the directors and principal officers are the misprisions of the corporation itself, and this is true even where the directors of the corporation wrongfully delegated their discretionary power to subordinate agents. 5 Thompson on Corps., secs. 6615, 6621, 6622; Angell & Ames on Corps., sec. 310; 10 Cyc. 1285; State ex inf. v. Ins. Co., 152 Mo. 1; Bank v. State, 1 Blackf. (Ind.) 267. (9) The information does not seek to deprive the stockholders of respondent of their property without due process of law. A proceeding by information, in the nature of a *quo warranto,* and praying judgment of forfeiture against the corporation itself, or judgment of ouster of a particular franchise misused or nonused, is a proceeding which applies alike to all private corporations. Due process of law means notice, a day in court and an opportunity to defend. Delaney v. Police Court, 167 Mo. 667; Hunt v. Searcy, 167 Mo. 158. If all persons brought under the influence of a law are treated alike, under the same conditions, it is not open to the objection that it denies to them the equal protection of

the law.  Railroad v. Mackey, 127 U. S. 209; Railroad
v. Harris, 127 U. S. 210; Missouri v. Lewis (Bowman
case), 101 U. S. 22; Turnpike v. Sanford, 163 U. S. 578;
Cotting v. K. C. Stockyards Co., 79 Fed. 679.   (10)
The act of the General Assembly, entitled, "An act pro-
hibiting book-making and pool-selling, and prescribing
a penalty therefor," approved March 21, 1905, is not
open to the constitutional objection that it contains two
distinct subjects which have no relation, and are not
germane.  The subject-matter of this statute is betting
on horse races by means of book-making and pool-sell-
ing· on such races, and both acts are clearly germane,
and a part of the same subject.  State v. Mead, 71 Mo.
268; State v. Bixman, 162 Mo. 1; Lynch v. Murphy, 119
Mo. 163; State v. Miller, 100 Mo. 439; Ewing v. Hoblit-
zelle, 85 Mo. 64; St. Louis v. Weitzel, 130 Mo. 614.


### HEARING ON DEMURRER.

BURGESS, J.—This is an original proceeding be-
gun in this court by the Attorney-General by filing here-
in, *ex officio,* an information in the nature of a *quo
warranto,* against the defendant corporation, the pur-
pose of which is to oust it of its franchises and corpor-
ate privileges, to have the same declared forfeited, and
all of the property, real and personal, of said defend-
ant, forfeited to the State.

The information filed by the Attorney General,
leaving off the formal parts, is as follows:

"Comes now Herbert S. Hadley, Attorney-General
of the State of Missouri, who in this behalf prosecutes
for the State, and informs the court that the Delmar
Jockey Club was organized as a corporation under the
provisions of article 1 and article IX of chapter 12
of the Revised Statutes of the State of Missouri for
1899, and the acts amendatory thereof, on or about the
18th day of January, 1901; that the capital stock of said
corporation, as stated in the articles of association

thereof, was one hundred thousand dollars, divided into one thousand shares of the par value of one hundred dollars each, and the purposes for which said corporation was formed, as alleged in said articles of association, were as follows:

" 'The purposes for which this corporation is formed are to encourage and promote agriculture and the improvement of stock, particularly running, trotting and pacing horses, by giving exhibitions of agricultural products and exhibitions of contests of speed and races between horses, for premiums, purses and other awards and otherwise; to establish and maintain suitable fair grounds and a race track in the city and county of St. Louis, with necessary buildings, erections and improvements, and to give or conduct on said grounds and race track, public exhibitions of agricultural products and stock, and of speed, or races between horses, for premiums, purses or other awards made up from fees or otherwise, and charge the public for admission thereto, and to said grounds and track; to engage in pool-selling, book-making, and registering bets on exhibitions of speed or horses at the said race track and premises, as provided by law, and to let the right to others to do the same; to conduct restaurants, cafes, and other stands, for the sale of food and other refreshments to persons on said premises; and to do and perform all other acts necessary for fully accomplishing the purposes hereinbefore specifically enumerated.'

"Your informant further states that since the organization of said Delmar Jockey Club it has become the owner of and is now, and at all times hereinafter mentioned was, the occupant of and in charge of a certain tract of land, known as the Delmar race track, lying partly in the city of St. Louis and partly in the county of St. Louis; upon which said land there was located a race track, and besides other buildings, erections and improvements, a certain shed or building, known as the betting ring or shed, for the purpose of having conduct-

ed therein pool-selling, book-making, recording and registering of bets upon contests of speed or powers of endurance between certain horses, upon said race track, and of which said shed or building said respondent, through its officers, agents and representatives, is now and at all times hereinafter mentioned was, the occupant of and in charge of.

"Your informant further states that said respondent, ever since its organization, has continuously, notoriously and willfully, within this State and at the county and city of St. Louis aforesaid, offended against and violated the laws of this State, and has grossly perverted, abused and misused its corporate authority, franchises and privileges and has unlawfully assumed and usurped franchises and privileges not granted to it by the laws of the State of Missouri, and especially in the following particulars, to-wit: That from the 18th day of January, 1901, up to the 16th day of June, 1905, said respondent, through its officers, agents and employees, conducted within the building, known as the betting ring or shed, hereinbefore mentioned, on the Delmar race track, the business of book-making and pool-selling, registration of bets and the acceptance of bets, and that during said period, said respondent, acting through its officers, agents and employees in charge of its said business, continuously, notoriously and willfully violated the laws of this State, in that it sold pools and accepted and registered bets from minors upon the results of contests of speed or power of endurance, known as horse races between horses, run on the track of said respondent. That since said 16th day of June, 1905, the said respondent, acting through the officers, agents, employees and representatives in charge of the business of said respondent, has further continuously, notoriously and willfully offended against and violated the laws of this State, in this, to-wit: It has continuously kept and occupied within this State its

said shed or building, known as the betting ring or shed, above described, located upon said Delmar race track, with certain books, instruments or devices for the purpose of recording or registering bets and wagers upon the results of trials or contests of speed or power of endurance of horses, which were made and took place upon said race track of said respondent; and it has, through its officers, agents, employees and representatives in charge of the conduct of its business, continuously recorded and registered bets and wagers upon the result of trials or contests of speed and power of endurance between certain horses, which were made and took place upon said race track of said respondent; the said respondent, acting through its officers, agents, employees and representatives in charge of its said business, and being the owner, occupant and person in charge of said shed or building, known as the betting ring or shed, as above described, has continuously upon said Delmar race track knowingly permitted said shed or building to be used and occupied for the purpose of recording and registering bets and wagers upon the result of trials or contests of speed and power of endurance between horses, which were made and took place upon said Delmar race track. And said respondent, acting through its officers, agents, employees and representatives in charge of the conduct of its said business, has continuously kept, exhibited, used and employed in said building, and continuously and knowingly permitted to be kept, exhibited, used and employed in said building, known as the betting ring or shed, upon said Delmar race track, certain devices and apparatus for the purpose of recording bets and wagers upon the result of trials or contest of speed and power of endurance between horses which were made and took place upon said Delmar race track.

"Your informant further states that said respond-

ent has never given any exhibition of agricultural products for the purpose of encouraging and promoting agriculture, or for any other purpose; that it has never given any exhibition of contest of speed and races between horses for the purpose of improving the stock of trotting and pacing horses; that it has never established or maintained any fair grounds in the city or county of St. Louis, or any other place.

"And your informant further states that the trials or contests of speed and power of endurance between horses which were at all the times herein mentioned made and took place upon said Delmar race track, were conducted under the direction, management and control of said respondent, acting through its officers, agents, employees and representatives in charge of its said business, and that said trials or contests of speed and power of endurance between said horses were conducted by said respondent at the times herein alleged for the purpose of enabling the said respondent to do the things and acts hereinbefore alleged to have been done by said respondent, in violation of the laws of this State. That said acts and things done by said respondent as aforesaid, constituted all of the business transacted or things done by said respondent under and by virtue of the franchise and authority conferred upon said respondent as a body corporate under the charter granted to said respondent by the State of Missouri. That by reason of the facts herein stated said respondent has willfully, continuously and unlawfully misused and abused the franchises, privileges and authority conferred upon it by the laws of the State of Missouri as aforesaid and that the commission by said respondent of the acts as herein stated in violation of the laws of the State of Missouri have been of great harm and injury to the public and a perversion and misuser of the franchises granted to it by the State of Missouri and a usurpation of franchises and privileges

not granted to said respondent by the State of Missouri, all to the great injury of the general public and the State of Missouri.

"Wherefore, Herbert S. Hadley, Attorney-General of the State of Missouri, who prosecutes in this behalf for the State of Missouri, prays the consideration of the court here in the premises that process of law may issue against said respondent, and that said respondent may be ousted of all its franchises and corporate privileges and that the same may be declared forfeited, and that all of the property, real and personal, of said respondent, be declared forfeited unto the State." .

Defendant filed demurrer to said information, as follows:

"The respondent now comes and says that the information filed herein is insufficient in law, and that it ought not to be required to answer the same; and the respondent further says that the said information is so insufficient in this:

"1. That the portion which relates to acts of bookmaking, pool-selling and registration of bets described as the business carried on by the respondent from January 18, 1901, to June 16, 1905, does not state violations of law, because such acts were lawful, there being no averment that the defendant was not licensed to do such acts.

"2. That portion which alleges that the respondent during such period 'sold pools and accepted and registered bets from minors,' does not state violations of law, because it is not alleged that the respondent knew that the persons whose bets were registered were minors, and there is no averment that the respondent was not licensed to sell pools or register bets.

"3. That portion which relates to acts of bookmaking and registering bets and acts of permission to others to make books or register bets, and to keeping

and using devices for recording bets, after June 16, 1905, does not state violations of law, because a corporation cannot commit a felony, or felonies, and the offense of book-making, pool-selling, or registering bets and the like is denounced a felony by the statutes of this State.

"4. That the information does not state any facts upon which a judgment of ouster could lawfully be based, for the obvious reason that to violate a criminal statute is not the usurpation or misuser of a franchise, there being a marked difference between franchises and felonies or misdemeanors, and *quo warranto* will not lie to compel the observance of a criminal statute, or to punish its violation.

"5. The information neither alleges nor charges that the stockholders of the defendant corporation directed or authorized its alleged officers to violate the criminal laws of the State or to commit the felonies charged in said information.

"6. The information neither alleges nor charges that any of the officers or agents of said corporation have been prosecuted under indictment or upon verified information for the felonies charged therein, and have been after trial found guilty thereof, but seeks to have this honorable court convict certain persons of the felonies charged in said information without the intervention of constitutional methods, and in a manner unknown 'to the law of the land'.

"7. Said information shows on its face that it seeks to deprive the stockholders of said corporation of their property without due process of law and without due conviction of any of the agents and officers of said corporation of the felonies imputed to it in said information.

"8. Because said information seeks to have this court adjudge specific persons to be guilty of felonies without the aid of a prior indictment or verified information charging such offenses, and without trial

by jury, as guaranteed in the Constitution of the State.

"9. That the act of the General Assembly, entitled, 'An act prohibiting book-making and pool-selling, and prescribing a penalty therefor,' approved March 21, 1905, is void, because it violates section 28 of article 4 of the Constitution, in that it contains two subjects, to-wit: the prohibition of book-making and the prohibition of pool-selling, which are two distinct subject-matters, which have no relation to each other, and are not germane.

"Wherefore the defendant prays judgment," etc.

After the demurrer was filed, the State filed a motion for judgment upon the pleadings. But such motion was unnecessary, since judgment, as a matter of course, must be for the State if the demurrer be not sustained and the defendant does not plead over; and nothing more will, therefore, be said regarding it.

The defendant's demurrer to the information in effect admits every material allegation in the information contained, but it does not admit mere legal conclusions, if any, stated in the information. This being the effect of the demurrer, it follows that all the acts charged in the information to have been committed by defendant in violation of law, after the 16th day of June, 1905, being material, stand admitted. But defendant contends that as such acts are declared by statute to be felonies, and that as a corporation cannot commit a felony, the violation of its charter in this respect, therefore, constitutes no ground for forfeiting its charter. That a corporation cannot have a felonious intent, and cannot, therefore, be prosecuted for a felony, is clear. It is equally clear, however, that an officer of a corporation, and in charge of its affairs, may as such officer do that which the statute declares to be a felony in like manner as he may do that which the statute declares to be a misdemeanor. There is no difference in principle.

[Bank of Vincennes v. State, 1 Blackf. (Ind.) 267; 5 Thompson's Commentaries on the Law of Corporations, secs. 6621, 6622.]

It is unnecessary to cite authorities to show that no felony can be committed without a felonious intent, for this is well-settled law. Upon this question, however, the defendant cites the case of the Commonwealth v. Proprietors of New Bedford Bridge, 2 Gray 339, which is deserving of more than a passing notice. In that case the defendant bridge company was prosecuted by indictment for maintaining a nuisance. The court said:

"The indictment in the present case is for a nuisance. The defendants contend that it cannot be maintained against them, on the ground that a corporation, although liable to indictment for nonfeasance, or an omission to perform a legal duty or obligation, is not amenable in this form of prosecution for a misfeasance, or the doing of any act unlawful in itself and injurious to the rights of others. There are *dicta* in some of the early cases which sanction this broad doctrine, and it has been thence copied into text-writers, and adopted to its full extent in a few modern decisions. But if it ever had any foundation, it had its origin at a time when corporations were few in number, and limited in their powers, and in the purposes for which they were created. Experience has shown the necessity of essentially modifying it; and the tendency of the more recent cases in courts of the highest authority has been to extend the application of all legal remedies to corporations, and assimilate them, as far as possible, in their legal duties and responsibilities, to individuals. To a certain extent, the rule contended for is founded in good sense and sound principle. Corporations cannot be indicted for offenses which derive their criminality from evil intention, or which consist in a violation of those social duties which appertain to men and

200 Sup.—4.

subjects. They cannot be guilty of treason or felony; of perjury or offenses against the person. But beyond this, there is no good reason for their exemption from the consequences of unlawful and wrongful acts committed by their agents in pursuance of authority derived from them. Such a rule would, in many cases, preclude all adequate remedy, and render reparation for an injury, committed by a corporation, impossible; because it would leave the only means of redress to be sought against irresponsible servants, instead of against those who truly committed the wrongful act by commanding it to be done. There is no principle of law which would thus furnish immunity to a corporation. If they commit a trespass on private property, or obstruct a way to the special injury and damage of an individual, no one can doubt their liability therefor. In like manner, and for the same reason, if they do similar acts to the inconvenience and annoyance of the public, they are responsible in the form and mode appropriate to the prosecution and punishment of such offenses. [Angell & Ames on Corp., secs. 394-396; Maund v. Monmouthshire Canal Co., 4 Man. & Gr. 452, and 5 Scott N. R. 457; The Queen v. Railroad, 3 Ad. & El. N. S. 223; The Queen v. Railroad, 9 Ad. & El. N. S. 315, 2 Cox C. C. 70; Railroad v. Broom, 6 Exch. 314; State v. Railroad, 3 Zab. 360.]''

It is apparent that this decision is not an authority for the contention that a corporation is not subject to an action of *quo warranto* to oust it of the franchises conferred upon it, for a misuse or perversion of them, or that a corporation is exempt from the consequences of unlawful and wrongful acts committed by its agents in pursuance of the authority derived from its charter. The information charges that respondent, ''acting through its officers, agents, employees and representatives in charge of its business,'' engaged in the acts of misuser charged against it in the information. It will thus be seen that the unlawful act charged is not against

the officers, agents, employees and representatives of
the corporation, but against the corporation itself.
There can be no doubt that a corporation may be pro-
ceeded against by *quo warranto* for a misuse or per-
version of the franchise conferred upon it by the State,
notwithstanding its officers and agents may at the same
time be amenable to the criminal law for offense com-
mitted by them in the perversion of such franchise. If
a corporation, through its servants and agents, may be
guilty of such abuses of its franchises as will subject it
to ouster by *quo warranto,* we can conceive of no
reason why such servants and agents, if the acts and
abuses committed by them be in violation of the crim-
inal statutes, may not at the same time be prosecuted
by indictment or information. The one is not a bar to
the other proceeding. Nor are we prepared to give as-
sent to the contention that the defendant corporation
could not be held to answer for such wrongful acts until
its agents, guilty of the criminal offense, be tried and
convicted.

It is argued by defendant that forfeiture will not
lie for an illegal act committed by a corporation. It is
true that not for every illegal act will the charter of a
corporation be forfeited; but the charter of the defend-
ant is a contract with the State that it will use the fran-
chises therein granted; that it will not misuse or per-
vert other franchises, and that it will not engage in
the doing or carrying on of any business which is unlaw-
ful or immoral.

But it is claimed for defendant that the only vio-
lation of law by it which would justify an action in *quo
warranto* would be a violation "of the organic law"
from which the corporation derived its existence. In
support of this position we are cited to the case of the
Ill. Trust & Savings Bank v. Doud, 105 Fed. 123. It
was held in that case that no corporation is required
to exercise all the powers conferred upon it as a condi-

tion to the exercise of any of them, unless such requirement is expressly made in some statute under which it obtains some of its powers and privileges, or its powers are inseparably connected with each other, and that it is only for the violation of an express provision of the law under which a corporation derives its powers and privileges, or for such a misuse or nonuse of the latter as results in a substantial failure to fulfill the design and purpose of its organization, that a forfeiture of its franchise will be decreed; and defendant contends that as the statute under which it obtained its powers and privileges does not expressly require that it establish and maintain fair grounds and a race track in the city and county of St. Louis, with necessary buildings, erections and improvements, and give or conduct on said grounds and race track public exhibitions of agricultural products and stock, a forfeiture of its charter should not be declared, unless the misuse or nonuse of its franchises results in a substantial failure to fulfill the design and purpose of its organization. It is expressly provided in the charter of the defendant that "the purposes for which this corporation is formed are to encourage and promote agriculture; . . . to establish and maintain suitable fair grounds and a race track in the city and county of St. Louis, with necessary buildings, erections and improvements, and to give or conduct on said grounds and race track public exhibitions of agricultural products and stock, and of speed, or races, between horses, for premiums, prizes or other awards, made up from fees or otherwise, and to charge the public for admission thereto and to said grounds and race track." It is alleged in the petition, and stands admitted by the demurrer, that defendant failed to comply with its charter in the respect indicated, and there is no escaping the conclusion that its nonuse of those franchises resulted in a substantial failure to fulfill the design and purpose of its organization, for

which a forfeiture of all of its franchises should be decreed, unless such forfeiture has in some way been waived by the State.

In State v. New Orleans Gas Light & Banking Co., 2 Rob. (La.) l. c. 532, it is said: "It may be proper to state that it is now well settled that an act of incorporation may be forfeited for a misuse of the powers entrusted to it. It is a tacit condition of a grant of incorporation that the grantees shall act up to the end or design for which they were incorporated. If they do not, the rights and privileges granted may be withdrawn." [5 Thompson on Corp. sec 6609; Terrett v. Taylor, 9 Cranch 43; State ex inf. v. Lincoln Trust Co., 144 Mo. 562.]

It is further contended by defendant that it was not the intention of the Legislature, upon any principle of rational construction, to make it a condition of the corporate life of racing associations, that they should not only provide the funds for the State Fair at Sedalia, but also, at the same time, conduct private fairs within their own local racing grounds; that this was not the intention of the Legislature in the permissive grant, which was fully subserved by the money contributed to the State Fair at Sedalia, and that it is only the nonuser of some business franchise which affects the public which the courts would consider upon an information alleging such nonuser as a ground of forfeiture; that in the case at the bar the public was more benefited by the contribution of money to the support of the fair at Sedalia, on behalf of the people of the entire State, and in exhibition of the products of the State there, than if a local exhibition of the products of St. Louis county had been given by the respondent corporation. In reply, we may be permitted to say that it is not our province to say that the public was in no way concerned about local exhibitions in St. Louis county of agricultural products, and stock. At any rate, we are unwilling to declare that the public was not interested in such

exhibitions. For many years such exhibitions have been held annually by corporations, all over the State, their object and purpose being the improvement of horticultural and agricultural products, as well as of stock, which would seem to indicate that the public is interested in such exhibitions, and that the public has been seriously injured by the nonuser of this franchise.

We are unable to concur in the position that this court will take judicial notice of the fact, even if true, that the defendant has every year created and paid over the fund for the making of such exhibitions at the State Fair at Sedalia, when in fact no such exhibitions have been held by defendant.

Defendant also contends that the acts of book-making, pool-selling and the registration of bets, alleged to have been committed by defendant between January 18, 1901, and June 16, 1905, were lawful, because it was permitted by its charter to engage in such business, and it is not alleged in the information that it was not licensed to do these acts; another contention being that the acts charged against defendant in the registration of bets and the selling of pools to minors were in nowise improper, because it is not pleaded that defendant was a licensed book-maker.

The argument with respect to that portion of the petition which relates to general acts of book-making, between January 18, 1901, and June 16, 1905, is that it does not show violation of the law, because *non constat* the defendant was a licensed book-maker. [Sec. 7419, R. S. 1899.]

The State contends that defendant's charter should be forfeited for book-making and pool-selling between January 18, 1901, and June 16, 1905, because that provision of its charter which authorized it to engage in such acts was invalid for the reason that it was not authorized by the organic law; but the laws of this State, and especially section 40, Laws 1905, page 8, recites

that "there is hereby appropriated out of the State Treasury, chargeable to the 'State Fair Fund,' the sum of eight thousand seven hundred and fifteen dollars, received into the State Treasury during the years 1903 and 1904, from pool-selling and book-making, as provided by article 2, chapter 105, Revised Statutes of Missouri, 1899," thus recognizing the validity of the law from whence defendant derived its power to engage in book-making and pool-selling, and the State having received and appropriated money from this source, it will not now be permitted to say that the law under which it was obtained was invalid and of no effect.

It is alleged in the information and admitted by the demurrer that during the time indicated defendant sold pools to and registered bets with minors, which was a violation of law, it having no authority so to do. To make and sell pools and book-bets to minors is expressly prohibited by statute, and any person doing so may be punished as for a misdemeanor. [Sec. 2193, R. S. 1899.] So that defendant was without authority from any source to sell pools to or register bets with minors, and in doing so it was exercising a power which it did not possess, the tendency of which was immoral and to encourage minors in dissipation and vicious habits. Defendant now contends that the portion of the petition which relates to such sales does not state violations of law, because it is not alleged that the respondent knew at the time that such persons were in fact minors. The statute is an absolute inhibition against selling pools or book-bets to minors, and it was entirely unnecessary that the petition should allege that such sales were made to minors, knowing such persons to be minors. It was the defendant's duty to know when sales were made that they were not made in violation of law.

The acts for which a forfeiture of defendant's charter is asked are acts done by the corporation

through its officers, agents, employees and representatives in charge of its business, and not any act done by unauthorized persons. A corporation can act only through its agents and servants, and it is responsible to the State for the acts of such agents and servants in the carrying on of the business of the corporation. [State ex inf. v. Ins. Co., 152 Mo. 1; State ex inf. v. Armour Packing Co., 173 Mo. 356.]

A final contention is that the act of the Legislature of 1905, entitled, "An act prohibiting book-making and pool-selling and prescribing a penalty therefor," approved March 21, 1905, is void because it violates section 28, article 4, of the Constitution, in that it contains two subjects, the prohibition of book-making and pool-selling, which are not germane but incongruous and in discord with each other. The section referred to reads as follows: "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title." Whatever may be the correct definitions of the terms "book-making" and "pool-selling," wherever either is used it is always understood to have reference to horse racing of some character, and the one is, therefore, germane to the other. When this is the case, the act is not unconstitutional. In State ex rel. v. Miller, 100 Mo. l. c. 444, it is said: "Its demands are that matters which are incongruous, disconnected and without any natural relation to each other must not be joined in one bill; and the title must be a fair index of the subject-matter of the bill. A very strict and literal interpretation would lead to many separate acts relating to the same general subject, and thus produce an evil quite as great as the mischief intended to be remedied; hence, a liberal interpretation and application must be allowed. In Ewing v. Hoblitzelle, 85 Mo. 64, the following rule, taken from Sedgwick, was approved: 'Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the inci-

dents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title, the statute is valid.' '' In State v. Morgan, 112 Mo. 1. c. 212, the court says: "All that the Constitution requires is that the subjects embraced in the act shall be fairly and naturally germane to that recited in the title. [State v. Bennett, 102 Mo. 356.] There can be no doubt but all the provisions of section 1561 [R. S. 1879] are naturally related and germane to one subject. In an act to punish cheats, frauds, etc., naturally belongs a provision as to what shall be sufficient statement of the offense in the indictment." The same rule has been announced in numerous decisions of this court since, and it may be regarded as well-settled law. Moreover, this court will not declare a law to be unconstitutional unless it be of the opinion that it is beyond a reasonable doubt, and it holds no such opinion in this case.

Our conclusion is that the defendant's demurrer, as to the first ground, should be sustained, and as to all the others, overruled, that leave be granted to defendant to plead over within fifteen days, and failing so to do, that judgment be entered ousting the defendant of all its franchises.

All concur except *Brace, C. J.,* absent.

### HEARING ON COMING IN OF ANSWER.

*Herbert S. Hadley,* Attorney-General, and *John Kennish* and *N. T. Gentry,* Assistant Attorneys-General, for informant in support of motion for judgment on the pleadings.

(1) The answer in this case is defective as a pleading according to the well-established rules of the common law by which pleas in *quo warranto* are to be determined, in that it joins a general traverse with a plea of confession and avoidance. Stephens' Pleading (2 Ed.), 265; Merceron v. Dowson, 5 Barn. & Cres. 479;

State v. Beecher, 160 Mo. 86. A plea may deny all·the facts, or it may single out some one material fact and traverse that, or it may confess all and set forth new facts in evidence. Hopkins v. Medley, 97 Ill. 402. But it must do one or the other, and cannot do both. Landis v. People, 39 Ill. 79; Conger v. Johnson, 2 Denio 96; Brown v. Artcher, 1 Hill 266; Van Etten v. Hurst, 6 Hill 311; Chandler v. Lincoln, 52 Ill. 75; State ex inf. v. Ins. Co., 152 Mo. 1; State ex inf. v. Vallins, 140 Mo. 523. (2) The acts of book-making and pool-selling, admitted to have been done by respondent between the 18th day of January, 1901, and the 16th day of June, 1905, constituted a misuse and abuse of its franchise. Being a corporation, respondent could not, under the provisions of sections 7419 to 7424, lawfully receive a license from the State Auditor to engage in book-making and pool-selling between said dates. The fact that the articles of incorporation attempted to authorize respondent to engage in book-making, pool-selling and registration of bets did not give it the right so to do, if, under the provisions of sections 7419 to 7424, a license could not lawfully be issued to a corporation. Secs. 4158, 7419, 7420, R. S. 1899; 5 Thomp., Corps., secs. 5839, 5991-5996; Railroad v. Oaks, 37 Ala. 649; Yonge v. Railroad, 31 Ala. 442; Albright v. B. & L. Assn., 102 Pa. 423; 1 Thomp., Corps., sec. 229; State ex rel. v. St. Louis Club, 125 Mo. 317; State ex rel. v. Moniteau Co., 45 Mo. App. 387; Stewart v. Waterloo Turnverein, 71 Iowa 226; 1 Clark & Marshall, Private Corps., p. 52; Benson v. Mfg. Co., 9 Metc. 562; Androscroggin Water Power Co. v. Bethel Steam Mill Co., 64 Me. 441; Pharmaceutical Society v. London and Provincial Supply Assn., 5 App. Cas. 557. (3) The fact that respondent may have secured and paid for licenses from the State to engage in book-making and pool-selling between said dates, and that said sums were used by the State for the support of the State

Fair, did not make said acts so alleged to have been performed by respondent lawful, nor does it relieve the respondent from the charge of non-user based on its failure to do those things which it was authorized to do by the provisions of its charter. Nor can the State be estopped by the unauthorized act of a ministerial officer. Bigelow on Estoppel (5 Ed.), 341; Pulaski v. State, 42 Ark. 118; Attorney-General v. Marr, 55 Mich. 445; State v. Brewer, 64 Ala. 287; United States v. Kilpatrick, 9 Wheat. 735; State v. Ins. Co., 31 N. E. 658; U. S. v. Wagon Road Co., 54 Fed. 807; Heidelberg v. St. Francois Co., 100 Mo. 69; Wheeler v. Poplar Bluff, 149 Mo. 36; State ex rel. v. Lincoln Trust Co., 144 Mo. 562.

*Bond, Marshall & Bond* and *Chester H. Krum* for respondent in opposition to motion for judgment on the pleadings.

The Attorney-General's objection to the form of the answer is evidently based on the common law rule against duplicity in pleading, which rule, as applied in the early administration of the common law, meant that the defendant's plea should not contain several distinct answers to the matters set up in the declaration, for the reason that by so doing it was possible for several separate and distinct issues to be joined, whereas it was the purpose of the common law system of pleading to deduce from the alternate allegations of the parties a single material issue decisive of the controversy. Because of its harshness this rule was very much modified, and numerous exceptions allowed by the common law judges, and was finally practically annulled so far as it related to defendant's pleading in chief (which was called his plea) by the Statute of Anne which provided that it should "be lawful for any defendant or tenant in any action or court, or for any plaintiff in replevin in any court of record with the

leave of the court, to plead as many several matters thereto as he shall think necessary for his defense."
By virtue of the above statute, parties were permitted to set up any number of consistent defenses in their plea, except that the statute was held not to permit a party to plead and demur to the same matter. Martin on Civ. Proc. at Common Law, secs. 303, 317.

GRAVES, J.—On July 28, 1905, Herbert S. Hadley, Attorney-General, filed in this court his information, *ex officio,* in the nature of a *quo warranto,* against the respondent corporation, the purpose of which is to divest said corporation of its franchises and forfeit its property to the State. To this information the respondent interposed a demurrer, which matter being in issue was submitted to this court and fully disposed of by an opinion by BURGESS, J., reported above, in which opinion the information is fully set out, and for that reason will not be incorporated herein.

After the disposition of the demurrer by the opinion aforesaid, the respondent filed answer as follows:

"Respondent, Delmar Jockey Club, comes by its attorneys, and for its answer to the information of the Attorney-General herein, admits that it is a corporation duly organized and incorporated under the laws of the State of Missouri and denies each and every other allegation in said information alleged or contained.

"Wherefore respondent prays that it be hence discharged with its costs.

"2. For its further answer to that portion of the information of the Attorney-General herein, wherein it is alleged that respondent has failed to exercise certain franchises, claimed to be possessed by it, this respondent states that it has fully carried out and exercised all those provisions in its charter authorizing it to give exhibitions of agricultural products and exhibitions of contests of speed and races between horses for the pur-

pose of encouraging and promoting agriculture and
the improvement of stock, and has provided suitable
fair grounds for the same, in this, that between the 18th
day of January, 1901, and the 16th day of June, 1905,
in pursuance of the provisions and requirements of
sections 7419 to 7424, inclusive, Revised Statutes 1899,
respondents duly paid large sums of money into the
Treasury of the State of Missouri, to the credit of the
State Fair Fund, the same being a fund created by
section 7424, Revised Statutes 1899, for the develop-
ment and advancement of the industrial interests of
this State under the direction of the State Board of
Agriculture, and that all said moneys so paid into said
fund were received, used and appropriated by the State
of Missouri, for the purpose of holding and giving an-
nual exhibitions of agricultural products and stock of
every kind and description at the city of Sedalia, Mis-
souri, and that the said sums of money paid by re-
spondent into the Treasury of the State of Missouri
under the terms of section 7419 to 7424, inclusive, were
used and appropriated by the said State of Missouri
and its said State Board of Agriculture solely for the
maintenance and support of the said Missouri State
Fair held annually at Sedalia, and for the further pur-
pose of providing, constructing, improving and equip-
ping all grounds, stands and buildings necessary for
the holding and giving of said fair.

"Respondents further state that by exercising and
receiving the said sums of money for the above-men-
tioned purposes the said State of Missouri intended to
and did accept the same as full and complete perform-
ance and use by respondents of its franchise to give
exhibitions of agricultural products and stock and the
said State of Missouri thereby intended to and did
waive any other or further exercise of such franchise
on the part of respondent.

"Further answering the allegations of non-user

from June 16, 1905, to the date of the filing of this information, to-wit, July 28, 1905, respondent states that the franchise of giving exhibitions of agricultural products and stock is not one which can be exercised continuously and at all times from the beginning to the end of the year, but is one, owing to its peculiar character, which can only be exercised during the harvest season of each year. For these reasons respondent was not required to exercise such franchise between the above specified dates, but respondent further avers that it has in good faith endeavored at all times to exercise the franchise granted to it by its articles of incorporation in the manner and for the purposes intended by such grant, and that such is its purpose in the future, and respondent intends in every way to comply with and perform according to law all the obligations which it assumed upon the grant of the aforesaid franchises, to it by the State of Missouri, and respondent again specifically denies each and every charge, allegation or assertion of a contrary purpose on its part, contained in the information filed herein.

"Wherefore, respondent prays that it be hence discharged with its costs."

Upon the filing of this answer the Attorney-General filed motion for judgment upon the pleadings, and the issues thus raised are the ones now for consideration and judgment by the court.

This motion is as follows:

"Comes now Herbert S. Hadley, Attorney-General of the State of Missouri, who in this behalf prosecutes for the State, and moves the court for judgment on the return and answer for respondent herein, for the following reasons:

"First. Said return and answer fails to state facts showing any sufficient cause or excuse for, or any legal defense to, the non-user of respondent's franchises authorizing it to give exhibitions of agricultural

products and exhibitions of contests or speed or races between horses for the purpose of encouraging and promoting agriculture and the improvement of stock, and for the establishing and maintaining of suitable fair grounds in the city and county of St. Louis, as set forth and charged in the information herein.

"Second. It appears from the facts stated in said return and answer, and the second count thereof, that respondent is guilty of the acts of misuser and abuser of its franchises charged in the information herein filed, in this, to-wit, that respondent engaged in the business of book-making and pool-selling, registration of bets and the acceptance of bets in violation of the laws of this State.

"Wherefore, informant prays that final judgment of ouster be rendered against the respondent as prayed for in the information in this case."

As a further part of the history of the case it might be said that the court sustained the motion for judgment and entered judgment of ouster and levied a fine of $5,000, but filed no opinion.

This judgment of ouster was for both misuser and non-user, and upon motion for rehearing was set aside, and said cause taken as submitted on the motion as above stated, and then assigned for opinion.

Points respectively urged by contending counsel will be duly noted in the course of our remarks.

I. The first question is to determine the effect of respondent's answer. There is first a general denial. This without further pleading would raise the issue both as to the misuser and non-user charged in the information. As to non-user, the general denial first pleaded is followed by a plea, hereinabove fully set out, which amounts to a plea of confession and avoidance. This answer admits, in effect, that it was the duty of the corporation to maintain fair grounds and hold an agricultural fair "in the city and county of St. Louis"

as provided by its charter, the language of which charter is as follows:

"The purposes for which this corporation is formed are to encourage and promote agriculture and the improvement of stock, particularly running, trotting and pacing horses, by giving exhibitions of agricultural products and exhibitions of contests of speed and races between horses, for premiums, purses and other awards and otherwise; to establish and maintain suitable fair grounds and a race track in the city and county of St. Louis with necessary buildings, erections and improvements, and to give or conduct on said grounds and race track, public exhibitions of agricultural products and stock, and of speed, or races, between horses, for premiums, purses or other awards made up from fees or otherwise, and to charge the public for admission thereto and to said grounds and track; to engage in pool-selling, book-making, and registering bets on exhibitions of speed or races at the said race track and premises, as provided by law, and to let the right to others to do the same; to conduct restaurants, cafes, and other stands, for the sale of food and other refreshments to persons on said premises; and to do and perform all other acts necessary for fully accomplishing the purposes hereinbefore specifically enumerated."

It undertakes to avoid this admitted failure by saying that by reason of the requirements of sections 7419 to 7424, Revised Statutes 1899, it had paid large sums of money into the State Treasury which were used to maintain a State Fair at Sedalia, Missouri. These sections of the statutes constituted the old law providing for licensing pool-selling and book-making, and providing that the license fees should go to the State Fair fund. Even before its repeal, this law, which is article 2 of chapter 105, Revised Statutes 1899, in nowise excused the respondent from exercising the franchise

granted it to establish and maintain an agricultural
fair. Whatever moneys it paid the State under these
sections of the law, were license fees, belonging to the
State, which could have been just as properly put in
another fund by the Legislature, as into the State Fair
fund. No money paid the State by reason of this law
in anywise excuses the respondent for a failure to use
the franchises granted to it. We thus have an admitted
failure to exercise the principal, and to the State and
the public the most beneficial, one of all the rights
granted it, and no legal excuse therefor. So that the
motion for judgment upon the non-user should be sus-
tained, unless it can be held that the general denial first
pleaded, raises the issue, notwithstanding the later plea
of confession and avoidance. This we think it does not
do. The plea of general denial does not raise an issue
where it is followed by a special plea of confession and
avoidance. [Price v. Mining Co., 83 Mo. App. l. c. 474;
Bank of Monett v. Stone & Prickett, 93 Mo. App. l. c.
294.]

In the Price case, SMITH, P. J., said: "It is a rule
of pleading that a general denial is overcome by a sub-
sequent confession and attempted avoidance. [McCord
v. Railroad, 21 Mo. App. 95.] It is a further rule that
where a pleading is ambiguous it is to be taken most
strongly in its interpretation against the pleader. The
defenses pleaded by the answer are clearly inconsist-
ent and should have been stricken out in the court
below (Darrett v. Donnelly, 38 Mo. 493, and Adams v.
Trigg, 37 Mo. 142); but as they were allowed to stand
without objection we must now regard the first, the
denial, as overcome by that of the subsequent confes-
sion and avoidance."

In the latter case, Bank of Monett v. Stone &
Prickett, BROADDUS, J., after a collation of the cases in
this State, uses this language, which we approve: "We
know of no rule of pleading which permits a party liti-

200 Sup.—5.

gant to deny his adversary's allegations, and at the same time to confess and avoid them. At common law the rule required the pleader to admit his adversary's cause of action and then to allege matters by way of avoidance. [Stephen's Pleading, p. 90.] There is no question but what the answer is in violation of the common law rules of pleading, but it is also at variance with our code regulating the subject. Our courts, in passing on the question, have held such pleas to be defective. 'A party cannot traverse and at the same time confess and avoid the same allegation.' [Coble v. McDaniel, 33 Mo. 363; Darrett v. Donnelly, 38 Mo. 492; Adams v. Trigg, 37 Mo. 141; Atteberry v. Powell, 29 Mo. 429.] In short, such a plea is subject to the objection of being inconsistent with itself, and also the charge of duplicity.'' [See, also, McCord v. Railroad, 21 Mo. App. 1. c. 95, and cases cited therein.]

We conclude, that as to the charges of non-user contained in the information, they stand as confessed under the pleadings, and the question next for consideration is whether or not for this confessed dereliction ouster should go, and if so to what extent. This question we consider next.

II. Courts move cautiously in taking from corporations their charter grant of franchises. No insignificant act of either misuser or non-user will suffice for the exercise of the power vested in the courts, but the courts can and will forfeit all the franchises of a corporation for either misuser or non-user if the acts or omissions are sufficiently great. In fact it may be said that forfeiture may be declared upon either of three grounds, (1) wilful non-feasance or non-user, (2) wilful misfeasance or misuser, (3) usurpation of powers not granted. [10 Cyc., 1280.]

Justice STORY, of the U. S. Supreme Court, at an early day announced the doctrine thus: ''A private corporation created by the Legislature may lose its fran-

chises by a misuser or *non-user* of them; and they may be resumed by the Government under a judicial judgment upon a *quo warranto* to ascertain and enforce the forfeiture. This is the common law of the land, and is a tacit condition annexed to the creation of every such corporation." [Terrett v. Taylor, 9 Cranch l. c. 51.]

Lewis, C. J., Supreme Court of Pennsylvania, in case of Commonwealth v. Bank, 28 Pa. St. l. c. 389, uses this language: "It may be affirmed as a general principle, that where there has been a misuser, or a *non-user*, in regard to matters which are of the essence of the contract between the corporation and the State, and the acts or *omissions* complained of have been repeated and wilful, they constitute a good ground of forfeiture."

The Supreme Court of Mississippi says: "The acts of misuser or *non-user* must be touching matters which are of the essence of the contract between the sovereign and the corporation, and they must be wilful and repeated." [Atty.-Genl. v. Railroad, 51 Miss. l. c. 608.]

In Iowa, the doctrine is thus stated: "A failure to substantially comply with the express provisions or conditions of the articles and of the general laws, or a wilful misuse or *non-use* in regard to matters which go to the essence of the contract between the corporation and the State, are acts and *omissions* which amount to a forfeiture. [Ang. & A., Corp., sec. 774; Boone, Corp., sec. 203; Mor., Priv. Corp., 1014; Tayl., Corp., sec. 457; Wat., Corp., sec. 427; Ins. Co. v. Needles, 113 U. S. 574, 5 Sup. Ct. Rep. 681; State ex rel. v. Railroad, 36 Minn. 246, 30 N. W. 816; State ex rel. v. Council Bluffs & N. Ferry Co., 11 Neb. 354, 9 N. W. 563; State v. Farmers' College, 32 Ohio St. 487.] Courts act with extreme caution in proceedings like this, and forfeitures will not be declared, except under the express provisions of the charter, or for a plain misuse

or *non-use* of powers, by which the corporation fails to fulfill the design and purpose of its organization. [State v. Farmers' College, supra; State ex rel. v. Commercial Bank, 10 Ohio 535; Atty.-Genl. v. Railroad, 51 Miss. 602; Railroad v. People ex rel., 73 Ill. 541; State v. Real Estate Bank, 5 Ark. 595; State ex rel. v. Societe Republicaine, 9 Mo. App. 114.] It is only such acts or omissions as concern matters which are of the essence of the contract between the State and the corporation, or, in other words, in which the public has an interest, that are causes of forfeiture. [Commercial Bank v. State, 6 Smedes & M. 599; Attorney-General v. Railroad, 6 Ired. Law 456; Atty.-Genl. v. Railroad, 51 Miss. 602; State ex rel. v. Council Bluffs & N. Ferry Co., supra; Thompson v. People ex rel., 23 Wend. 537; State v. Real Estate Bank, supra; State ex rel. v. Railroad, supra.]'' [State ex rel. v. Ry. & Bridge Co., 91 Iowa l. c. 525.]

In addition to the cases quoted from, and the cases cited in the quotations, many others along the same line could be cited. Suffice it to say that the courts hold, and rightfully, that where there is either wilful misuse or wilful non-use of the franchise or franchises, which are of the essence of the contract with the State, and those in which the State or public is most interested, then a forfeiture of the whole charter should be and will be declared. When a corporation receives from the State a charter granting certain franchises or rights, there is at least an implied or tacit agreement that it will use the franchises thus granted; that it will use no others, and that it will not misuse those granted. A failure in any substantial particular entitles the State to come in and claim her own, the rights theretofore granted, and this through a judgment of forfeiture in a proceeding like the one at bar.

The right to construct and maintain suitable fair grounds in the city and county of St. Louis, and to

give exhibitions of agricultural products thereat, is one of the essence of this contract between the State and the respondent. It was and is the franchise in the exercise of which the State and general public have the most interest and concern. A failure to exercise this franchise was a failure to perform the very thing which was of the essence of the contract. That this failure was wilful is shown by the length of time of the admitted non-user, as well as by other things made apparent by the pleadings. So far as the State and general public are concerned this right or franchise, so long neglected, was leading and uppermost, in interest. No legal excuse is offered for respondent's failure. It would appear, at least by inferences deducible from the pleadings, that respondent was alert in promoting that incidental feature of its charter, gambling upon horse races, and furnishing its gamblers with refreshments, both liquid and solid, but extremely indifferent as to doing the things, moral in character, which it had, by receiving its charter, tacitly agreed to do, and the only things in which the State and public had any special interest.

Such a flagrant and willful non-user of franchises, which are of the very essence of the grant, demand, in our judgment, the forfeiture of all the rights and franchises granted, and we therefore hold that there shall be a judgment decreeing a forfeiture of all the rights and franchises granted to respondent by its charter and a dissolution of said corporation.

III. We reach now the interesting proposition of this case, and that is whether or not, in addition to ousting respondent from its franchises, we can and should appropriate a part of its substance to the use and benefit of the State.

The State often grants to corporations many rights which inure largely to the benefit of the corporation and not to the benefit of the State, but with the sweet

a tinge of bitter is usually found in the shape of some important right or franchise, the exercise of which by the corporation does redound to the benefit of the State. This benefit is a consideration for the grant of the other rights largely beneficial to the corporation. In our previous proposition we do not hold that a forfeiture should follow the mere non-user of such rights and franchises as inure largely to the interest of the corporation and are of no special interest to the public, but we do hold that if the franchise or right not used is the principal one in which the State is interested, and is of the very essence of the contract, and there is willful non-user, then a forfeiture should be declared. Then in addition to a judgment of ouster, what, if anything further, should be done? It is urged by respondent that for mere non-user no fine or taking of property can be added to the judgment of ouster. In our opinion it makes no difference upon what ground the ouster is placed, whether misuser, non-user or usurpation of rights. These proceedings are no longer recognized as criminal proceedings and have not been so recognized since the early days of the common law, but we have continually imposed what are called fines, a term no doubt coming down from the time when the proceeding was looked upon as a criminal proceeding. The implied contract with the State, when the charter was given respondent, was that it would exercise and use the granted rights; that it would use none other, or, stated otherwise, that it would not usurp other rights; that it would rightfully use the powers granted and not misuse them. A willful failure of either of these covenants with the State will authorize a forfeiture, and why not a fine? We forfeit for non-user, and why? Because there has been a failure to perform the obligations to the State. Because there has been a violation of the contract with the State. Misuser is likewise a violation of the implied

agreement with the State. So is usurpation. Each are but violations of the implied contract with the State, and for these violations we declare forfeitures; why not fix penalties and punishments in the one as in the other? The gist of each in *quo warranto* is the willful violation of the rights of the State under the implied contract, and not the violation of some criminal law, for we do not try criminal cases and affix criminal punishments in *quo warranto* proceedings. The violation of a corporation's contract with the State by misuser or usurpation may be evidenced by the fact of the violation of some statute, criminal in character, but in this kind of proceeding we try the right of the corporation to further hold its franchises, not the question of finding its guilt or innocence under the statute and fixing punishment permitted by the statute. It is the only way the State has of preventing the abuse of the confidences it has reposed in these corporate creatures which are of its own making. This abuse may be by non-user, misuser or usurpation, but in our judgment, the State has the same rights in each event, both as to the forfeiture and the fine.

In the case at bar, the conditions presented practically amount to a misuser. Here the State grants several powers to respondent, but with the central thought and purpose of procuring an agricultural fair. As an inducement and to encourage respondent in so doing, other powers are given which inure to the financial benefit of the corporation. The maintenance of an agricultural fair we know often proves a financial loss. Here we have the respondent sorting out the bitter from the sweet — exercising those powers which inure to its own benefit and willfully neglecting those in the interest of the public. This willful conduct, considering the powers granted as a whole, with the central purpose in that whole, to construct fair grounds and buildings, and maintain an agricultural fair, might be

said to even be a misuser of its powers and franchises — and such a misuser as would authorize both fine and forfeiture.

But returning to the question of non-user, pure and simple. The overwhelming weight of authority is to the effect that the court can forfeit the franchise for non-user. Forfeiture is but taking from the corporation its property, its corporate rights, which are a part of its property. Forfeiture is not only the taking of property, but it is further punishment by putting to death the corporation itself. It we can take one class of the corporation's property for mere non-user, why not another? This respondent claims that the rights and franchises granted and which it is exercising are valuable. If we can take them for non-user, why can't we go further and say that we will not only punish you by forfeiture of all these valuable rights, which you hold as your property, and by putting you to death by dissolution, but we will, because of the willful wrong to the State, take from your gains a further portion of your property? We see no distinction. The character of the judgment is within the discretion of the court.

The doctrine is announced broadly in 10 Cyc. 1279, as follows: "It may be collected from a comparison of a number of decisions speaking upon that question that, although the grounds of forfeiture have been clearly made out, yet the question of imposing the severe penalty of the law is committed to judicial discretion so far as mitigation is concerned, unless a judgment of ouster is commanded by a statute in such terms as leaves the court no discretion."

And in High's Extraordinary Legal Remedies (3 Ed.), p. 702, sec. 758, as follows: "The propriety of imposing a fine in addition to judgment of ouster is regarded as a matter of sound judicial discretion, and when no improper motives are alleged or shown against

the party ousted, the fine imposed will be merely nom-
inal.''

Our own court through MARSHALL, J., in case of
State ex inf. v. Armour Packing Co., 173 Mo. 1. c. 392,
said: ''This leaves only the question of punishment.
The punishment to be imposed rests in the sound ju-
dicial discretion of the court. It need not necessarily
be a general judgment of ouster. It may be an ouster
of the right to do the particular act complained of
(State ex inf. v. Lincoln Trust Co., 144 Mo. 562; State
ex rel. v. Gas & Oil Co., 153 Ind. 483; State ex rel. v.
Railroad, 47 Ohio St. 130; State ex rel. v. Standard
Oil Co., 49 Ohio St. 137; Yore v. Superior Court, 108
Cal. 431; State v. Turnpike Co., 10 Conn. 157; State
ex rel. v. Topeka, 30 Kan. 653; People v. Railroad, 15
Wend. 113; Commonwealth v. Canal Co., 43 Pa. St.
301); or it may be a suspensive judgment of ouster with
a fine accompaniment (State ex inf. v. Ins. Co., 152
Mo. 1), or it may be a simple fine, if it appears that
the trust, pool or conspiracy complained of and proved,
has been abandoned. In short, the character of the
judgment rests in the discretion of the court. [5
Thompson on Corp., sec. 6812; Weston v. Lane, 40 Kan.
479; State ex rel. v. Railroad, 91 Iowa 517; State ex inf.
v. Bernoudy, 36 Mo. 1. c. 281.]''

In the Packing Company case, supra, it is true the
implied contract with the State was violated by mis-
user of powers granted, but the penalty fixed, $5,000,
was not under section 8968, the quasi-criminal section
of the law, but under the broad right of the court to
control the creatures of the State by taking their prop-
erty from them, whether it be their franchises or other
kinds of property.

In fact, Judge MARSHALL, in the Packing Company
Case, 173 Mo. 356, at page 380, expressly says that the
fines and penalties fixed by the statutes, at least quasi-
criminal, if not criminal, are not considered in the case.

His language is: "Other penalties and forfeitures are imposed by section 8968, but are not involved in or sought to be enforced in this proceeding."

What is true of this case is true of other cases where the court in its discretion has by its judgment forfeited to the State a part of the property of the corporation. Without lengthening an argumentative opinion, already too long, we conclude that this court has the right to add to its judgment of ouster and dissolution, what is usually termed a fine; that the fine heretofore originally fixed, $5,000, is not an unreasonable one; that the judgment of this court should and will be to the effect that respondent is ousted of all of its charter rights and the same forfeited to the State; that out of its property it pay to the State the sum of five thousand dollars, together with the costs of this action, and that said corporation be dissolved and it is so ordered.

IV. Upon a reading and consideration of the foregoing opinion written by GRAVES, J., *Valliant* and *Lamm, JJ.*, concur *in toto*. *Fox, J.*, concurs in the second paragraph or proposition thereof, and expresses no opinion as to the first paragraph or proposition, but dissents from the third paragraph; *Brace, C. J.*, and *Gantt*, and *Burgess, JJ.*, concur in the opinion except as to the third paragraph thereof.

It therefore follows that, by the opinion of the majority of this court, the respondent should be ousted of all of its franchises and charter grants and that the same be forfeited to the State, the corporation dissolved, but that no further fine or punishment be inflicted, and that the judgment of the court go to that effect and that respondent pay the costs. It is accordingly so ordered.